UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| ALEXIS EDELSTEIN,<br><br>　　　　　　　Petitioner,<br>vs.<br><br>TARA MICHELLE NELSON,<br><br>　　　　　　　Respondent. | Case No.: 2:25-cv-00003-GMN-MDC<br><br>**ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** |

Pending before the Court is Petitioner Alexis Edelstein's Emergency Motion for a Temporary Restraining Order ("TRO") and Petition for Warrant in Lieu of Writ of Habeas Corpus, (ECF No. 4). Because Petitioner fails to make a showing of imminent irreparable harm, the Court **DENIES** the Motion for a Temporary Restraining Order.

## I.　BACKGROUND

This case arises out of a dispute between Petitioner Alexis Edelstein, father of six-month old child E.E., and Respondent Tara Michelle Nelson, E.E's mother. (*See generally* Compl., ECF No. 1). Petitioner alleges that Respondent has wrongfully taken E.E. out of Argentina and retained E.E. in Nevada, and that Argentina is E.E.'s habitual state of residence. (*Id.* ¶¶ 5–6, 16–18).

In September 2024, the parties traveled to Henderson, Nevada, to visit Respondent's parents. (*Id.* ¶ 41). Petitioner alleges that the parties planned to return to Argentina in January 2025, while Respondent responds that the parties had not set a return date. (*Id.* ¶ 42); (Resp. 7:3–6, ECF No. 11). Further, while Petitioner asserts that Respondent began talking about staying in Nevada with E.E., which he did not agree to, Respondent asserts that Petitioner had previously agreed to move to Nevada, but vacillated. (Compl. ¶¶ 53–57); (Resp. 8:5–6).

Respondent served the Petitioner with a Complaint for Divorce on December 22, 2024. (Compl. ¶ 59).

Petitioner files this Petition pursuant to the 1980 Hague Convention on Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, ("ICARA"). (*Id.* ¶ 7). His Motion requests a Warrant in Lieu of Habeas Corpus be issued to return E.E. to him, a TRO prohibiting E.E.'s removal from Nevada, or in the alternative, an order directing an officer to secure the child's passports, and the scheduling of an expedited merits hearing. (TRO Mot. at 6–7, ECF No. 4).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. Fed. R. Civ. P. 65. The standard for both forms of relief is the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). Like a preliminary injunction, the Court may issue a temporary restraining order if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## III. DISCUSSION

The Hague Convention aims to "secure the prompt return of children wrongfully removed or retained in any Contracting State." Hague Convention, Oct. 25, 1980, art. 1., 19 I.L.M. 1501, 1501. It further exists "to ensure that parents cannot gain 'tactical advantages' in child custody proceedings 'by absconding with a child to a more favorable forum' or by

otherwise undermining custody decrees entered in the country of the child's habitual residence." *Colchester v. Lazaro*, 16 F.4th 712, 717 (9th Cir. 2021) (quoting *Holder v. Holder*, 392 F.3d 1009, 1013 (9th Cir. 2004)). "Where a parent files a petition for return alleging that a child under the age of 16 was wrongfully removed or retained within the last year, 'the country to which the child has been brought must order the return of the child forthwith, unless certain exceptions apply.'" *Id.* (quoting *Abbott v. Abbott*, 560 U.S. 1, 9 (2010)).

Petitioner correctly filed his petition in this Court, as "[a] person seeking the return of a child under the Convention may do so by filing a petition in a court where the child is located." *Id.*; *see also* 42 U.S.C. § 11603(b). Petitioner alleges that E.E. has been wrongfully retained by Respondent in Nevada since December 22, 2024, (Compl. ¶ 65), and thus this district is where E.E. is currently located. *See Holder v. Holder*, 305 F.3d 854, 869 n.5 (9th Cir. 2002) (noting the Eleventh Circuit's "common-sense definition" that "located" in the context of ICARA refers to "the place where the abducted children are discovered.").

**A. Temporary Restraining Order**

The Court turns now to Petitioner's request for a TRO prohibiting the removal of E.E. from Nevada and directing an officer to secure E.E.'s passports. The Parties' briefing focuses primarily on the merits of Petitioner's claim, but they cannot evade the requirements of Rule 65 by arguing the merits. Petitioner fails to demonstrate that he will suffer irreparable harm without preliminary relief, which defeats his request for a TRO.

"The Ninth Circuit makes clear that a showing of immediate irreparable harm is essential for prevailing on a temporary restraining order." *Juarez v. Asher*, 556 F. Supp. 3d 1181, 1191 (W.D. Wash. 2021) (citing *Caribbean Marine Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). Petitioners must make a clear showing that "irreparable harm is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. A TRO ordered on anything less is "inconsistent" with the "characterization of injunctive relief as an extraordinary remedy . . . ."

1  *Id.*  The presentation of irreparable harm must be "clear." *Garcia v. Google*, 786 F.3d 733, 746
2  (9th Cir. 2015).  "Speculative injury does not constitute irreparable injury sufficient to warrant
3  granting a preliminary injunction." *Caribbean Marine Servs.*, 844 F.2d at 674.  To that end,
4  "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a
5  plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary
6  injunctive relief." *Id.*  "Subjective apprehensions and unsupported predictions . . . are not
7  sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable
8  harm." *Id.* at 675–76.

9  　　In this case, Petitioner alleges irreparable harm if E.E. is removed from the jurisdiction,
10 and potential harm to the child due to Respondent's mental health. (*Id.* ¶¶ 14, 16).  The Court
11 finds these alleged harms to be merely speculative because Petitioner failed to provide evidence
12 that these harms were likely and immediate.

13 　　Beginning with Respondent's mental health, Petitioner alleges that Respondent has been
14 diagnosed with mental health illness and that she suffered from suicidal ideations before and
15 during their relationship. (Mot. TRO ¶¶ 5–12).  He asserts that she has attempted suicide twice
16 before they met, that she has been seeing doctors, received treatments for her illness in Nevada
17 in 2023, and that her mental health has worsened postpartum (*Id.*).  He also alleges that she
18 again expressed suicidal ideation in November 2024. (*Id.* ¶ 11).  Petitioner attached a
19 photograph of Respondent receiving treatment, statements from nurses and employees
20 commenting on Respondent's depressed state after E.E. was born, and texts from Respondent
21 with her medications and a message that she was struggling postpartum. (Photograph, Ex. E to
22 Compl., ECF No. 1-3); (Statements, Exs. H–I, ECF No. 1-3); (Texts, Exs. W–X to Compl.,
23 ECF No. 1-3).

24 　　In her Response, Respondent asserts that abuse by Petitioner and others pushed into her
25 depression before the birth of E.E. (Resp. 4:1–5:14).  She notes that she returned to Nevada for

depression therapy in 2023 and received the treatments not only for depression, but also for her other chronic health conditions. (*Id.* 5:15–23). After the birth of E.E., she asserts that Petitioner provided little to no help with the baby, and that she was suffering from exhaustion and postpartum depression, so she sought treatment from a psychologist and psychiatrist. (*Id.* 6:17–21). She provides evidence that her doctor confirmed that she did not have suicidal ideations or other behaviors indicating a risk of danger to herself or others. (Dr. Milagros Mendez Ribas Letter, Ex. 5 to Resp.). The doctor noted that she was "highly compliant" with her recommended treatment and that her "symptoms improved notably after returning to the United States and receiving support from her family." (*Id.*). When Respondent informed Petitioner of her intention to file for divorce, he threatened suicide in November of 2024. (Resp. 7:16–22). She attaches text messages showing a conversation in which she asked Petitioner not to kill himself and told him that she'd call his mother to let her know. (Nov. 2024 Text Messages, Ex. 8 to Resp.).

      Considering the evidence from both parties, the Court does not find imminent irreparable harm to the child due to Respondent's mental health. Although the evidence shows that Respondent struggled with depression and other conditions before and after E.E.'s birth, it also shows that she sought treatment and took the medications recommended by her doctors. The evidence also demonstrates that her condition has improved since moving back to Nevada and living with her parents, and other than Petitioner's conclusory statement that Respondent threatened suicide in 2024, the evidence shows that it was the *Petitioner* who threatened suicide.

      Petitioner also fails to demonstrate imminent irreparable harm of Respondent taking E.E. out of Nevada. Respondent's Response states that she "is in agreement that E.E. should not leave the State of Nevada until both this case and the Family Court case are resolved." (Resp. 23:23–24). Respondent and E.E. live with her parents, who are employed in Las Vegas.

Petitioner does not allege that Respondent threatened to take E.E. out of the state and has not provided any evidence of her intent to do so. Because Respondent's assertions of harm lack evidentiary support, the Court finds that he has not met his burden to establish that he or the child is likely to suffer irreparable harm in the absence of an injunction. For the same reasons, the Court finds it is not necessary to take the child from Respondent's custody, as requested by Petitioner's Emergency Petition for Warrant in Lieu of Writ of Habeas Corpus.

### B. State Court Proceeding

The Parties' divorce proceedings are underway in the Eighth Judicial District Court, and Petitioner argues that any custody proceedings should be stayed. (Compl. ¶¶ 73–74). This Court may only resolve the question of whether the child was wrongfully removed from his habitual residence, and only once that question is resolved may custody be decided on the merits. *See* Hague Convention, art. 12, 19 I.L.M. at 1502; art. 16, 19 I.L.M. at 1503.

Further, a federal court may vacate a state court custody determination that frustrates the purpose of the Hague Convention or violates the Hague Convention's provision staying custody proceedings. *Id.*; *see also Gaudin v. Remis*, 415 F.3d 1028, 1037 n.2 (9th Cir. 2005); *Mozes v. Mozes*, 239 F.3d 1067, 1085 (9th Cir. 2001), *abrogated on other grounds by Monasky v. Taglieri*, 589 U.S. 68, 84 (2020). In *Mozes*, a California state court entered a custody award while a Hague petition was pending appeal to the Ninth Circuit. 239 F.3d at 1085 n.55. The Ninth Circuit declared the state court's custody decision to be "premature," noting that the state court case was stayed pending the resolution of the claims in district court. *Id.* Here, the Parties have not claimed that the state court has already determined custody, or is currently making that determination, so the Petitioner may raise this argument at a later stage in the proceedings.

### C. Requests For Attorneys' Fees

Lastly, both Parties request that the Court award them attorneys' fees. Respondent requests fees "in light of this Court's inherent equitable power to award fees in the interest of justice,"

and because Nevada state law awards fees in domestic litigation between married parties. (Resp. 24:6–9). Petitioner requests fees under 42 U.S.C. § 11607, which allows for certain costs and fees as a remedy for international child abduction. (Compl. ¶¶ 88–89). Neither party complied with Local Rule 54-14, which lays out the requirements for a motion for attorney's fees, and thus the requests are DENIED without prejudice.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Motion, (ECF No. 4), is **DENIED.**

**IT IS FURTHER ORDERED** that this case is REFERRED to the Magistrate Judge for a case scheduling conference or an evidentiary hearing, as appropriate.

**DATED** this __21__ day of February, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT